# JOHN LAWLOR

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW — *act when justified as self-defense.* To justify one in shooting at another in self-defense, it is essential that his apprehension of serious or great bodily injury be reasonable. It is not proper to say in an instruction, if he had *any* such apprehensions.

2. The use of the words " serious bodily injury," instead of the words " great bodily harm," employed in the statute, in instructing the jury as to the law of self-defense, will not render the instruction objectionable or erroneous.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Mr. EMERY A. STORRS, for the plaintiff in error.

Mr. CHARLES H. REED, State's Attorney, for the People.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

Plaintiff in error was tried and convicted in the Criminal Court of Cook county, upon an indictment in the usual form,

charging him with an assault upon one Devol with intent to murder him. Upon the trial, evidence was given tending to show that only a short time previously to the assault in question, and on the same day, Devol had committed an assault and battery upon plaintiff in error, by knocking him down in the street, and while the former was upon the body of the latter, inflicting personal injuries, some person in Devol's company kicked plaintiff in error; that at the time the assault occurred, for which plaintiff in error was convicted, the latter met Devol in a public street of Chicago, it being only about two hours after Devol's previous assault upon plaintiff; that upon the occasion of such second meeting, Devol had a cane in his hand, and, upon seeing plaintiff in error near by, he changed it from one hand to the other and raised it in a threatening manner. Devol was a gambler by profession, and was, at this time, accompanied by another gambler of the name of Garrity, who was shown to have been a desperate character, who had been in the penitentiary for manslaughter, and after his release therefrom had been arrested for violent assault and for larceny. The evidence tended to show that the assault of plaintiff in error upon Devol, in question, was made when the former was approached by Devol and Garrity, the former of the two having but a short time before committed violence upon plaintiff, as above stated, and now, with a cane in his hand and accompanied as before recited. The theory of the defense was that plaintiff in error was not the assailant, and acted upon a reasonable apprehension that great bodily injury was about to be inflicted upon him by Devol, supported, as he appeared to be, by this desperate character, Garrity.

The prisoner's counsel asked the court to give to the jury the following instructions:

"Before the jury can convict under the indictment in this case, they must be satisfied beyond a reasonable doubt, that the defendant intended to murder the prosecuting witness, that he had this intent at the time of the firing, and that he fired the shots with no other intent, and without any appre-

hension of receiving from the prosecuting witness a serious bodily injury."

"The jury are instructed, that if they believe from the evidence in the case, that there is a reasonable doubt as to whether the prisoner at the time of the shooting was under reasonable apprehensions that the prosecuting witness intended to inflict upon him serious bodily injury, and that he fired the shots in self-defense, then the jury must acquit."

These instructions were refused by the court, to which exception was taken.

It is not true nor is it claimed by the State's attorney, that the propositions embraced in these instructions, or their equivalent, were embodied in any that were given. The only point of objection to them urged by counsel for the people, to justify their refusal is, that the word "*serious*" is used in defining the degree of apprehended bodily harm, instead of "*great*," as employed in the statute. And the case of *Reins* v. *The People*, 30 Ill. 256, is cited by him as authority. That case is not an authority for the position. There, the court, on behalf of the people, instructed the jury, that to justify the killing the "threatened danger must be so great as to create a reasonable belief in the mind of the accused of imminent peril to life, or the most serious bodily harm." This court simply held that the instruction required a reasonable apprehension of a greater degree of bodily injury, than that contemplated by the statute, to constitute a justification. That "great bodily harm" falls far short of the most serious bodily harm; that the latter might endanger life, the other not.

The court did not there decide that the very words of the statute, "great bodily harm," must be used in instructions, but merely that it was improper to instruct for the people, that a bodily injury must have been reasonably apprehended by the accused of such a character as might endanger his life. So, on the other hand, we may say, that it is not competent for the prisoner to ask instructions, that he might be justified by a reasonable apprehension of any bodily harm or injury of

a less momentous character than that contemplated by the expression, " great bodily harm," used in the statute. But while this is so, it does not follow that the identical words of the statute must be followed. Equivalent or equipollent words will answer. It is quite usual to substitute "injury" for " harm," and nobody ever thought of questioning it. If the prisoner's counsel saw fit to say " *enormous* bodily injury," instead of " great bodily harm," that certainly would be no ground for refusing the instruction, if otherwise correct.

Suppose, in the *Reins case*, above cited, instead of the State's attorney asking the instruction there condemned, the prisoner's counsel had asked one whereby the statute was construed as meaning the most serious bodily harm ; would the court have been justified in refusing it ? We think not. Because, although not couched in the language of the statute, it implied a higher degree of apprehended bodily harm than the statute required, and would therefore be more favorable to the people's case and less to the prisoner's. This shows that it was not intended, and this court cannot hold that the use of the identical words of the statute is indispensable.

Now the word " serious," when used to define the degree of bodily harm or injury apprehended, requires or implies as high a degree as " great," and the latter word as used in the statute means high in degree, as contradistinguished from trifling.

Such, likewise, is the meaning of " serious " when used in the same connection. The definition given by lexicographers of the word " serious " is " important, weighty, momentous and not trifling."

In drawing these instructions the prisoner's counsel seems to have followed the language used by this court in *Hopkinson* v. *The People*, 18 Ill. 264, as respects the substitution of " *serious* " for great, in defining the degree of apprehended bodily harm. It is thus: "If the circumstances attending the assault were such as to justify a reasonable conclusion in the mind of Hopkinson of impending danger of *serious*

*bodily injury* from Cummings, and he acted from the instincts of self-preservation, etc., he could not be guilty of the crime charged, although, in fact, there was no actual danger."

We are inclined to hold, therefore, that the use of the word "serious" instead of "great" did not vitiate these instructions. The first of the two above set forth is faulty in omitting the word "reasonable" before apprehension; "*any* apprehension" is not sufficient. It must be a reasonable apprehension. The second one, however, is free from that objection and should have been given.

The refusal of the second of the above instructions being sufficient to justify a reversal of the judgment, the other questions raised, as they are not likely to arise upon another trial, will not be considered. The judgment of the court below will be reversed and the cause remanded.

*Judgment reversed.*